Good afternoon. We have one case this afternoon and it's number 18-1407 Paza Staffing Services, Inc. v. Commissioner of the Internal Revenue. Mr. Chamberlain and Ms. Avetta. Am I pronouncing that correct? Yes, sir. Thank you. Whenever you're ready. May it please the Court. My name is Harold A. Chamberlain and I represent Paza Staffing Services, Inc. I would like to reserve five minutes of my time for rebuttal. Certainly, Mr. Zapolanski. Thank you. He's here at the table with me. Thank you. Your Honor, this is a non-qualification of an ESOP case. That non-qualification category carries a lot of weight with this decision because this means that the Commissioner has said that this case was never qualified from the beginning. How did you preserve the 414-M argument? Sir? I said, how did you preserve the 414-M argument? How did I presume it? The Court said in a footnote that that argument was abandoned. Why are you saying it was not abandoned? It was not abandoned for three reasons. After the statutory notice was issued, we raised 414-M as our defense in the petition that was filed. And after the government filed their motion for summary judgment, we filed a court-ordered objection to the government's summary judgment based solely on and when I filed a summary judgment motion for the taxpayer, I noted in the summary judgment motion that the judge had still not ruled on my objection to the government's motion for summary judgment. And the reason the judge hadn't ruled was that it was a court-ordered objection, and I don't see how the court can grant the summary judgment in the lower court without at least ruling or looking at my objection to the summary judgment motion of the assertion that there was abandonment? No, sir. Judge, the judge is probably one of the busiest judges in the court. He writes all of their major, a lot of their major opinions. He's a very busy judge. In this case, it was two years after the summary judgment was filed, and he ordered a court-filed objection within a short time, but it was two years after that before he even looked at the case again. So I don't think the judge forgot about it or anything. I just don't think he looked at it once he mistakenly applied Section 414B. I think what the judge thought was that while you initially had brought it up when you had the objection to the summary judgment motion in 2015, you hadn't reasserted that particular 414M claim. Well, Your Honor, I didn't reassert it in the sense that Section 414 controls this case, and I had filed an objection, and I thought the judge had at least a duty to rule on it, even if he ruled against me. But he didn't do that. Now, one can make an argument that but for that possible footnote 2 in the court's opinion, it is a short, succinct, and very clear opinion as to how you trace out what goes on here in terms of whether this particular ESOP gets to do as it intended to avoid taxes or not. Yes. What is the big problem with the tax court's opinion, in your view? Thank you, Your Honor. I was going to bring that up. The tax court opinion on page 4 in the first full paragraph goes directly to why the court did what they did. The facts of this case are undisputed. The doctor owned 100% of Golden Gate, and the ESOP owned 100% of Paz's stock. And I submit to the court that based on those facts, it is a legal impossibility to find a controlled group of corporations because no one person owns 10% or more of both corporations. The only definition of controlled corporations applicable here under 414M is a brother-sister corporation, which you could find in an affiliated service group. But Paz was exempted from the affiliated service group because it never owned any stock in Golden Gate. And the exemption under M2 is clear. Going back to 1999, why didn't Dr. Zepelonsky indicate the connection to Golden Gate on the 1999 application? I'm sorry, sir, I can't hear you. Why didn't Dr. Zepelonsky indicate in 1999 a connection to Golden Gate when he sought tax-exempt status for the ESOP? I'm sorry. Why in 1999 didn't Dr. Zepelonsky indicate the connection that he had to Golden Gate when he sought tax-exempt status for the ESOP? He did. What did he say there on the application as far as he was concerned and Golden Gate was concerned? When the ESOP was set up, Dr. Zepelonsky transferred 100% of the stock to the ESOP and the tax court found as a fact that the stock in Paz was never owned by Dr. Zepelonsky. So if there was never any ownership in him except for the erroneous attribution under 1563, then he could not have had a controlled group of corporations. And the service doesn't say that Dr. hid something from him. If you looked at the administrative record, and I'm sure people have, it's very clear 414M was pled extensively in the administrative record. Let's get to 414M. 414B does not help you, is that correct? If we just looked at 414B? If 414B applies, we lose. And 414M came into being after 414B and supposedly was to close a loophole and it says it applies to this subsection. So isn't this subsection limited to 414M as opposed to 414 in general? No, sir. Why is that? 414M was enacted back in 1980 as a rebuttal to the Garland case and Kitty case. And they were two cases in the tax court where the physician owned 50% or less in the service organization. And under the law that was then, Kitty and Garland were decided for the taxpayer. Congress then decided to enact 414M to cure that problem. And 414M cured that problem because they required only 10% or more of ownership in the service organization by the attending physician. But this case was set up in 1980 after Congress had substantially amended the provisions relating to the use of 414M by permitting a subchapter S corporation to become a shareholder, a trust to become a shareholder in a sub S corporation. And then they amended the statute to permit the income, the income from to the trust to be tax free. Now when they did that, they also implemented a plan to let one man, one professional ESOP plans be qualified. Otherwise, we wouldn't have a qualification letter in September of 1999. And if you'll note in the revocation letter, they have not revoked the qualification letter. This suit is to revoke the qualification. And they can't do that because under 414M, there is no attribution of the service of the trust of the ESOP to the shareholder just because he's a shareholder. There is no such statute on the books. And you only get attribution to the doctor when you apply 1563A. I had one question. Just to roll back to something that you'd said before. Now, your argument seems to suggest that there's section 414B, okay, and that is for controlled groups of corporations on the one hand, and you're talking about section 414M for service organizations on the other. Now to use your language, is there anything on the books that suggests that it's dual track? In other words, can they be mutually exclusive? No, sir. They are two statutes applying to the same issue. And what happens is that under 414B, you cannot apply 414B unless you have a controlled group of corporations. And if we had had a controlled group the day he signed up, they would never have issued a qualification letter. If you'll read our qualification letter, it says we are qualified as a tax-exempt trust. And the thing I want to leave the court with, if nothing else, is that there is absolutely nothing that happened in the year 1999 that changed the fact that Dr. owned 100% of Golden Gate and the trust owned 100% of the stock in Plaza. And that's important because this court cannot legally find that this was a controlled group of corporations if the stock of the two corporations are owned by two different individual entities for which there is no attribution at the time it is formed. In other words, we were qualified. Dr. Zablansi, in setting up this ESOP, did exactly what Congress had authorized by making a tax-exempt trust able to be a sub-s shareholder and also able to be tax free. Thank you. We'll get you back on rebuttal then. Sir? We'll get you back on rebuttal then. Thank you. Thank you. You got five minutes, I think, on rebuttal. Appreciate it, John. Thank you, sir. Ms. Avetta? Thank you, Your Honors. Julia Avetta for the United States. This case turns on whether Section 414M can apply the Affiliated Service Group provision. You had argued that, or at least the court did, that the argument was abandoned. Do you really like the 2012 position for a declaratory judgment mentioned 414M? In 2013, the motion for the brief in opposition to the summary judgment motion of the IRS mentioned 414M again. And then in 2015, while they didn't explicitly mention it, they referred to their earlier opposition to the IRS as still pending summary judgment petition. It seems like that goes against saying it was abandoned. We're not arguing that it's waived on appeal, Your Honor. The tax court treated the argument as abandoned in that they ceased to advance it as an affirmative grounds for judgment in their favor. And I think that that's fairly represented on the record. They raised it as a potential avenue of relief in their petition. They raised it as a defense to the government's motion for summary judgment. They did not raise it as a basis for summary judgment in their own favor. For today's purposes, why don't you assume that we don't think the argument was abandoned and address it on the merits? Yes, Your Honor. The question before the court then is whether this provision, which governs Affiliated Service Groups, applies to an entity that has explicitly conceded on brief that it is not and cannot be part of an Affiliated Service Group. And I think you've discerned that the answer cannot be yes. It must not apply. The provision speaks of the category of entities to which it applies. The service organization definition on which PASA relies, which is in subsection 3, subsection M3, makes clear that the term service organization means an organization, principal business of which is the performance of services, for purposes of this subsection. In other words, you only get to subsection 3 once you're already in M. And you can't be in M if you're not an Affiliated Service Group. You must be in subsection B. And the tax court correctly followed that path. The way the ERISA qualification provisions are set up, you must first qualify under section 401A by, among other things, meeting minimum performance or minimum participation standards. And those are prescribed in section 410B. Those require counting of the employees who are entitled to participate in an ESOP. It's an anti-discrimination provision to keep ESOPs from tilting too heavily in favor of highly compensated employees, including employees who own majority shares in multiple corporations. What happened here was that a successful heart surgeon created a separate corporation, separated from his surgical practice but retained full ownership of it, acquired all of the stock to this new corporation, which made a subchapter S election, conveyed that stock to a trust, and then sought and obtained qualification for it as a qualified ESOP trust. So now, all of the stock of the S Corp is nominally owned by the ESOP trust. But the same individual is the trustee of the trust, the beneficiary of the trust, the president of the S Corporation, the president of the surgical practice, and the 100% owner of the surgical practice. And that situates him clearly in the category of highly compensated employees that invites scrutiny and says, now, are you following the non-discrimination provisions here in ERISA? Are you making sure that all of your non-highly or a sufficient of your non-highly compensated employees are allowed to participate? And that's when you get to the aggregation provisions. And that's where you need the 414M argument to clear that hurdle. Because if you are counting employees by the definition set forth in 414B, PASA's plan can't qualify. If you are treating PASA as an affiliated service group, you use a different attribution provision. That's from Section 318A. And under that... And you're saying they cannot be an affiliated service group? They admit on brief that they cannot be. It is at page 13 of their brief and page 7 of their reply. They do not, for a moment, suggest that PASA is an affiliated service group. And the reason why is, as opposing counsel noted, 414M was enacted in response to several manipulative situations that came before the tax court in the Kitty and Garland cases, where different partnerships were structured to own enough of each other that each individual one slid under the statutory floor. I'm sorry, I don't understand. If they don't fall within 414M, isn't that the end of the story? Yes, Your Honor. The end of the story. And it's our position that they don't fall within 414M. I asked your adversary on the way out. Are Sections 414M and 414B mutually exclusive? They apply to different types of organizations, but you cannot escape the application of 414B or 414C, for that matter, by applying 414M. They reach a mutually exclusive outcome in their attribution in circumstances basically limited to the ones before this Court. In most other aspects, they are materially the same. And that's because 414M was enacted to include within the provisions of 414, 414 in general, to bring within the ambit of ERISA those abusive or manipulative structures where corporations engineered their ownership of each other to avoid sufficient concentration of ownership. In an affiliated service group, 414M removed that obstacle, tightened that, closed up that loophole and said, even if you're doing this and you're playing this shell game with nominal owners of things, we're still going to subject you to the participation requirements in 410B. And here's how we're going to do it. We're going to define you as an affiliated service group. You will meet this statutory definition, which we'll set forth in here. And we're only going to use the 318 attribution rules of ownership, aggregation of stock. Now, your adversary pointed to the qualification letter as, I guess, being relevant to the issues in this case. Do you agree? I do not, Your Honor. It was originally qualified. The application for qualification is in the supplemental appendix at pages 41 through 46. And as the Court can see, there's no mention made that Pazza shares common origins with Golden Gate or is controlled by the same individual who controls Golden Gate. We don't suggest that there is any misdeed in that omission, but we do suggest that it is disqualifying. And the tax court correctly so held. So if this is 414B, I take it that the mention of any kind of Chevron deference or Chenery is really not relevant. That's correct, Your Honor. We were a little surprised even to hear that invoked here because the decisions of the tax court are not due Chevron deference. They're reviewed by this court as the decisions of a district court. The tax court is reviewing an administrative record, but this court is not. Any questions? Thank you very much. Thank you, Your Honor. Thank you, Your Honor. The government's right if Golden Gate and Pazza are an affiliated service group. But under the plain meaning of the 414M statute, Pazza is exempted from the qualification as an affiliated service group because they never owned any stock in Golden Gate. And if you understand the case, you understand that Pazza had to own some stock in Golden Gate, or the doctor needed to own some stock in Golden Gate, so that there were two people owning stock in both entities. And that's why I emphasized to the court that when Judge Holmes here found that the doctor had always owned all of Golden Gate and Pazza never owned any of Golden Gate, you can't legally have a brother-sister corporation. And the application of 414M, just because it's on the books, if you'll read that statute and understand it clearly, it only applies to a controlled group of corporations. I mean, it doesn't apply to 414M. 414M is controlled by 318A for attribution of ownership. And the only way the judge ever got to the fact that there was a controlled group is he assumed it when he said that the doctor was a That didn't have anything to do with anything. There's no evidence in this record at all that there was ever any common ownership of Golden Gate by Dr. Zapolanski. I mean, it's just the record's But 414, I asked you this before, 414M. I'm sorry. 414M says that it is applicable only for purposes of this subsection. And don't you need 414M to cancel out 414B, which you say at 414B? Because 414M applies to all service organizations. As the government is arguing that you can never have They're arguing that a service organization can never have a tax-exempt ESOP if they are not covered by 414M. In other words, 414M is a much broader stroke. Think about this from the background. When they decided and legislated 414M, it cured the problem in Kitty and Garland. You can look in all the, everybody wrote a law review article about how smart they were that Congress had cured everything. But we're talking about post-time, 1997 and 1998, when Congress changed the law and intended to make employee benefits more liberal. And one of the ways they did this is, and if you look at it very closely, you can't deny it, when the doctor set his ESOP up, he had the exact program that Kitty and Garland held was not a control group based on the fact that there was no common ownership. Common ownership is the key to this case. There is no common ownership. By the judge's own findings. And nobody disputes that he ever owned any of Golden Gate. The only dispute here is attribution under 1563A because of 414B, which cannot be applied if it's not a control group to begin with. You follow me? Thank you, sir. Thank you very much. I appreciate your patience. Thank you to both counsel for well-presented arguments, and we'll take the matter under advisement. Thank you, sir. Recess until tomorrow morning. Basically, we'll put it down the way I think it should be. And basically, as she said, we think it should be 414B, not 414A. Yeah, but you can't be in a 414B because that only applies to a control group. Yeah, and they're assuming. No, I think he took everything. Right? Because these books were shared, right? Well, they got every point. Yeah, and I'm glad they asked questions. Oh, and they paid attention. Yeah, that was very important. Yeah, that's why I think 5 amendments. Because she sounds somewhat logical. Michael, you have a blessed day, sir. You too.